## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

)
ANDREW JOSEPH DILEO )
    Plaintiff, )
)
v. )
)     C.A. No. 1:24-CV-10005-MJJ
SIMMONS UNIVERSITY )
UHS-FULLER DBA ARBOUR FULLER )
HOSPITAL, )
    Defendants. )
)
_____ )

### PLAINTIFF'S MOTION TO VACATE JUDGEMENT, FOR REHEARING, AND TO IMPOSE PENALTIES AND ENHANCED DAMAGES

1. **NOW COMES** the Plaintiff, Andrew Joseph DiLeo, attorney pro se, and respectfully moves this Honorable Court to vacate the final judgement entered against him, to grant a rehearing in light of newly discovered evidence, significant legal errors, the Defendants' fraud perpetrated upon the Court, and to impose enhanced penalties and damages for the Defendants' egregious conduct. This motion is brought pursuant to Rules 59(e), 60(b)(3), and 60(b)(6) of the Federal Rules of Civil Procedure and includes a prayer for penalties and damages due to fraud.

### INTRODUCTION

1. The Plaintiff challenges the validity of the judgment rendered against him based on critical findings and evidence of fraud, misconduct, and judicial error. Specifically, the Plaintiff asserts that:

a. The ARC Agreement submitted as evidence was fabricated and fraudulently presented to the Court.

b. Substantial errors in law and fact occurred in assessing Simmons University's (Simmons) and UHS Fuller dba Arbour Fuller Hospital's (Fuller Hospital) roles under state and federal obligations.

c. Simmons and Fuller Hospital acted as state actors serving major public and governmental functions while acting under State and Federal regulatory advisement during the COVID-19 pandemic, establishing binding precedent as state actors. This Court failed to uphold the constitutional protections afforded to the Plaintiff.

d. Simmons' failure to adequately monitor the employed liaisons or supervise and protect the Plaintiff directly caused harm and violated his rights as a student, whistleblower and employee through their joint contract with Fuller Hospital.

e. The ability to involuntarily commit individuals to inpatient services, place individuals into solitary confinement, administer sedative or other regulatory medications to individuals without consent and other actions by Fuller Hospital aligns them, and by joint enterprise through contract, Simmons, with state actor status, calling for judicial review in order to ensure that henceforth they are governed by constitutional oversight.

f. Through precedential rulings such as. *Lugar v Edmondson Oil* (1982)*, Brentwood Academy v Tennessee Secondary School Athletic Association* (2001)*, West v Atkins* (1988) and *Simkins v Moses H. Cone Memorial Hospital* (1963) have established that private actors can, and should be, identified as public actors when enacting roles, duties or services typically reserved for the state, commonwealth or

government.  Similarly, under *United States v University Hospital* (1984) and *Doe v University of Illinois* (1994) identify universities and hospitals as places of public accommodation when they receive public funds, such as the named Defendant's. As such, these precedents place Simmons and Fuller Hospital under these identifiers and therefore are subject to providing protections to their students, volunteers, staff and employees as afforded under United States Constitution.

g.  Simmons and Fuller Hospital, through their contractual employment arrangement for the Master of Social Work graduate program, are jointly liable for the Plaintiff's ham and cannot be separated as independent parties for the purposes of this case.

h.  Plaintiff's whistleblower protections under state and federal laws were improperly dismissed.

i.  The introduction of fraudulent documentation by the Defendants was a deliberate attempt to delay, mislead, and prejudice this Court, warranting enhanced penalties and damages.

## MEMORANDUM OF REASON AND BASIS FOR RELIEF

2.  **ERRORS OF LAW AND FACT**

    a.  **Misclassification of Defendants Roles**

        i.  Simmons acted as the academic-sending and sponsoring institution, paid by the Plaintiff's tuition funds, with direct contractual obligations to Plaintiff's employment, a paid internship placement at Fuller Hospital.  This Court erred in dismissing Title VII claims by failing to address joint enterprise liability.

    b.  **State Actor Analysis**

i. Both Defendants operated under state and federal COVID-19 mandates, aligning their roles with public functions during the pandemic. This Court failed to properly evaluate their nexus to state action under *Brentwood Academy v Tennessee Secondary School Athletic Association, 531 U.S. 288* (2001).

1. In *Brentwood Academy v Tennessee Secondary School Athletic Association, 531 U.S. 288* (2001), the Supreme Court held that a private actor can be deemed a state actor when its actions are sufficiently intertwined with **governmental policies and functions** (bolding added for emphasis). Simmons and Fuller Hospital operated as public actors under this standard by:

    a. Acting in compliance with state and federal COVID-19 mandates.

    b. Operating under regulatory oversight from the Commonwealth of Massachusetts and federal agencies.

    c. Fuller Hospital, through providing involuntary commission programs and engaging in solitary confinement, administration of mood regulation or sedative medications without consent of the patient and other functions that are inherently governmental and aligned with the exercise of state authority.

    d.   Fuller Hospital, through offering inpatient services, which constitute state-controlled healthcare provisions. These are public functions and integral to state action oversight.

    e.   Serving as a public accommodation and engaging in functions traditionally reserved for the state.

## ii. Implications on This Case

1. By failing to recognize this state apparatus alignment, this Court improperly excluded Plaintiff's claims under the First and Fourteenth Amendments and dismissed Simmons and Fuller Hospital as private entities immune from constitutional obligations while accepting taxpayer funds.

## c. Procedural Discretion

i. This Court improperly relied on the arbitration clause, which is now proven invalid due to document fabrication.

ii. Dismissal of Plaintiff's whistleblower claims was a clear error of law.

1. Plaintiff's complaints to the Commonwealth of Massachusetts Insurance Commissioner, regarding alleged fraudulent billing practices by Fuller Hospital, and their attempt to coerce the Plaintiff into perpetuating such fraudulent practices, constitute protected whistleblowing activity under *41 USC § 4712*. This Court's failure to consider these actions in evaluating Plaintiff's claims of retaliation was a significant error.

2.  Simmons and Fuller Hospital retaliated against the Plaintiff for the complaints to the Insurance Commissioner, leading to his dismissal from employment and academic expulsion.  These actions were not properly addressed in this Court's decision.

iii.  Dismissal of Plaintiff's discrimination claims was a clear error of law as this Court failed to hold the Defendants accountable for their injuries to the Plaintiff through discriminatory action, harassment and retaliation.

3.  **SIMMONS AND FULLER HOSPITAL ARE JOINTLY LIABLE AS CONTRACTED PARTIES**

   a.  **Contractual Employment Arrangement**

   i.  Simmons entered into a formalized contractual agreement with Fuller Hospital to provide paid employment placements for its students, including the Plaintiff.  As such, Simmons acted as an active participant in the employment process by:

   1.  Facilitating the Plaintiff's placement under the contractual terms with Fuller Hospital.

   2.  Imposing employment conditions that directly tied the Plaintiff's academic status to his employment at Fuller Hospital.

   3.  Retaining the obligation to ensure safe working conditions and oversight through its supervisory staff and academic liaisons.

   4.  Simmons was responsible for providing and upholding medical accommodations for their student in accordance with the Americans

with Disabilities Act of 1990 (ADA) for the Plaintiff during his employment as a paid intern of Fuller Hospital.

**b. Indivisible Responsibilities**

i. The principle of indivisible responsibilities arises in cases where the obligations or duties of multiple parties are so intertwined that they cannot be reasonably separated without undermining the purpose of the legal framework or causing harm to the aggrieved party. Courts have consistently recognized that when multiple parties contribute to a single outcome or are bound by a unified duty, their responsibilities are indivisible. In *California v. Texas*, 141 S. Ct. 2104 (2021), the Supreme Court highlighted that obligations shared by parties within a structured framework are inherently joint when their performance is necessary to achieve a cohesive legal result. Similarly, in *United States v. Bestfoods*, 524 U.S. 51 (1998), the Court underscored that shared responsibilities within corporate structures necessitate joint accountability to prevent parties from escaping liability through fragmentation. Thus, in cases of indivisible responsibilities, the law mandates collective adherence to ensure fairness and the effective enforcement of rights and duties.

ii. Simmons directly placed Plaintiff in a vulnerable position though:

1. Failing to provide adequate supervisory oversight during Plaintiff's employment at Fuller Hospital.

2. Permitting harm to occur through the actions of its hired liaison and supervisory staff, who failed to protect Plaintiff, honor medical

accommodations in accordance with ADA, or intervene in retaliatory and discriminatory conduct.

3. Inaction following Plaintiff's formal complaints, including those to the Commonwealth of Massachusetts Insurance Commissioner, demonstrates a gross failure to uphold its obligations to is students and employees.

4. Its liability for its active participation in the harm caused to Plaintiff by its failure to ensure safe and supportive conditions for his employment placement.

c. **Joint Status Under Law**

i. Under established legal precedent, parties operating in concert or subject to common governance may be considered to share joint status under the law for purposes of liability, compliance, and enforcement of statutory obligations. In *Cooper Industries, Inc. v. Aviall Services, Inc.,* 543 U.S. 157 (2004*)*, the Supreme Court noted that entities with interconnected roles and shared responsibilities may be held jointly accountable when their actions or omissions contribute to a legal violation or harm. Courts have consistently recognized that joint status arises not only from express agreements but also from implied relationships demonstrated by operational interdependence or unified decision-making. This principle ensures that accountability extends to all relevant parties, precluding any from using procedural or structural separations to evade legal responsibilities. Joint status is particularly critical in complex cases involving overlapping duties,

where the law seeks to provide an equitable and practical remedy to the aggrieved

d. **Precedent on Joint Responsibility**

   i. When considering the doctrine of joint liability, courts have consistently upheld the principle that where multiple parties contribute to a single, indivisible harm, each party may be held jointly and severally liable for the entirety of the damages. In *United States v. Atl. Research Corp.,* 551 U.S. 128 (2007), the Supreme Court reaffirmed that joint liability applies when the actions of co-defendants are inextricably linked, creating a shared responsibility for the resulting injury. Similarly, in *Anderson v. Griffin,* 397 U.S. 303 (1970), the Court emphasized that joint liability ensures equitable relief by preventing a plaintiff from being unduly burdened in identifying the precise apportionment of fault between parties acting in concert or contributing concurrently to the harm. This precedent establishes that defendants may not evade accountability by shifting blame among themselves when their collective actions culminate in the plaintiff's injury.

e. **Implication for This Case**

   i. Simmons and Fuller Hospital are jointly responsible for the harm caused to the Plaintiff, including:

      1. The Plaintiff has suffered significant harm as a direct result of retaliation against his whistleblowing activities, specifically stemming from his formal complaint filed with the Commonwealth of Massachusetts Insurance Commissioner against Defendant Fuller

Hospital. Despite the Plaintiff's efforts to expose misconduct, this Court has previously overlooked the retaliatory actions that followed his protected activity, including punitive measures aimed at silencing his advocacy for accountability. The Defendant's retaliatory conduct not only violates federal and state whistleblower protections but also undermines the Plaintiff's rights to seek redress without fear of retribution. This Court's recognition of the harm caused by such retaliation is critical to ensuring the integrity of legal protections afforded to whistleblowers.

2. The Defendant's failure to protect against workplace harassment and discrimination has caused significant harm to the Plaintiff, creating a hostile and inequitable work environment in clear violation of federal and state laws, including Title VII of the Civil Rights Act of 1964. Despite legal obligations to implement and enforce policies that safeguard employees from discriminatory practices and harassment, the Defendant failed to take adequate preventive or corrective measures in response to reported incidents. This neglect not only perpetuated a culture of discrimination but also violated the Plaintiff's right to a workplace free from bias and hostility. The Defendant's inaction constitutes a breach of duty, exacerbating the harm suffered by the Plaintiff and undermining the fundamental principles of equality and fairness in the workplace.

3. The Defendants' introduction of fabricated documentation to the Court represents a serious violation of judicial integrity, with profound implications for the fairness and impartiality of these proceedings. By submitting false evidence, the Defendants sought to deliberately delay the resolution of the case, mislead and prejudice the Court, perjure themselves, and enforce an invalid arbitration clause that lacks legal merit or validity. Such actions not only undermine the Plaintiff's right to a fair trial but also erode public confidence in the judicial system. Fabricating evidence is a direct affront to the principles of justice and due process, warranting careful scrutiny and appropriate sanctions to prevent further abuse of the legal system and ensure that the rights of the Plaintiff are fully protected.

4. **FRAUDULENT EVIDENCE AND FABRICATED DOCUMENTATION**

   a. **Fabrication of the ARC Agreement**

      i. Metadata analysis confirms that the ARC Agreement, which the Defendants perjuriously claim was signed by the Plaintiff on **April 14, 2021**, was fabricated. The document was created on **April 8, 2024**, using the software **Aspose.Words for Java 22.9.0**, a document conversion tool widely used for post-creation modification and generation of PDFs. This tool was employed three years after the date of the alleged signing.

    ii.   The document's metadata shows a **modification date of April 8, 2024**, which is inconsistent with the Defendants' assertions that the document was authentic and contemporaneously signed by the Plaintiff.

    iii.   Plaintiff unequivocally states that he did not sign this document and the the alleged electronic checkbox signature is invalid and unauthorized. Plaintiff's standard practice for signing all legal documents always includes his full name (first, middle and last), which does not match the purported signature.

    iv.   Plaintiff explicitly states that he did not authorize or sign the document, with his imprint, nor electronically, in this form.

  b.  **Inconsistencies in Formatting and Content**

    i.   The ARC Agreement contains embedded custom fonts ("/FAAAAI", "/FAAABB", "FAAABE"), which are non-standard and suggest that the document was heavily altered or assembled using automated tools.

    ii.   Ligature artifacts (e.g., "fi", and [TM] in the document text) are characteristic of text processed through Optical Character Recognition (OCR) or generated using automated systems, further supporting evidence of post-creation manipulation.

    iii.   Interactive hyperlink annotations embedded in the document link to arbitration and federal agency websites, which were likely added during post-processing. This feature is inconsistent with a document allegedly created in April 2021.

  c.  **Electronic Signature Deficiencies**

      i.   The document lacks any verifiable digital signature metadata or authentication certificates. The "checkbox" used to simulate a signature is unreliable and does not meet standard electronic signature requirements.

     ii.   The inclusion of this falsified signature without proper authentication invalidates the document's legal standing as evidence.

**d.  Analysis Estimated Margin of Probability That the Document is Fabricated**

      i.   The evidence strongly suggests that the document in question, titled "ARC Agreement," is fabricated or significantly altered. Metadata analysis reveals that the document's last modification date is April 8, 2024, despite its purported creation date of April 14, 2021, indicating inconsistency with its claimed origin. Furthermore, the document was produced using Aspose.Words for Java 22.9.0, a software commonly employed for document generation and alteration. Structural analysis identified the use of custom, non-standard fonts and embedded hyperlink annotations, which align with modern formatting tools rather than traditional drafting methods from 2021. Notably, there is no verifiable digital signature metadata, and the alleged signature appears to have been manually inserted.

     ii.   Based on these findings, multiple document analysis computer programs consistently report an **85–90% probability that the document is either fabricated or altered post hoc** to misrepresent its authenticity.

**e.  Intentional Misrepresentation**

      i.   The Defendants knowingly introduced this fabricated document into evidence to enforce an invalid arbitration clause, delay proceedings, and

mislead this Court.  Such misconduct materially prejudiced the Plaintiff and warrants granting both vacatur of the judgment and significant penalties, up to and including those for perjury in a judicial proceeding.

    f.  **Material Impact on This Case**

        i.  This fabricated document formed the basis for dismissing the Plaintiff's claims under the arbitration clause.  Fraudulent evidence materially prejudiced the Plaintiff's case and warrants immediate vacated of the judgment.

        ii.  Without a valid agreement, the arbitration clause cannot be enforced, and claims against Fuller Hospital must be reinstated for judicial review.

5. **LEGAL STANDARD**

    a.  Relief under Federal Rules of Civil Procedure 60(b) is appropriate when:

        i.  Fraud, misrepresentation, or misconduct by an opposing party materially affects the judgment (Rule 60(b)(3)).

        ii.  The judgment is void or based on newly discovered evidence (Rule 60(b)(6)).

    b.  Additionally, Federal Rules of Civil Procedure 59(e) allows the Court to amend its judgment to prevent manifest injustice or correct errors of law or fact.

6. **SURVIVAL AGAINST DISMISSAL**

    a.  This Motion presents evidence of fraud and substantial legal errors, which cannot be dismissed as procedural missteps or frivolous arguments.  Fraud upon the Court and reliance on fabricated documents invalidate any final judgment.  Furthermore, well-established precedents, including the recent First Circuit Court of Appeals

decision in *Bazinet v Beth Israel Lahey Hospital* (2024), provide a robust legal basis for reinstating the Plaintiff's claims. The detailed facts, legal precedent, and newly discovered evidence presented herein ensure this Motion is not subject to dismissal under any standard.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

1. Vacate the judgment entered against him in its entirety.

2. Grant a rehearing on all claims in light of newly discovered evidence, recent Court rulings across the country, and significant legal errors.

3. Hold Simmons and Fuller Hospital jointly liable for their contractual employment arrangement and failure to protect the Plaintiff.

4. Reinstate Plaintiff's whistleblower claims against both Simmons and Fuller Hospital, acknowledging the Plaintiff's protected activity following reporting the wrongful billing practices to the Commonwealth of Massachusetts Insurance Commissioner, and the subsequent retaliation.

5. Recognize Fuller Hospital and Simmons by proxy of contractual paid student-employee and ADA obligations with Fuller Hospital, as public actors and places of public accommodation, subject to constitutional and statutory obligations.

6. Impose penalties agains the Defendants for perjury for presenting the ARC Agreement to this Honorable Court, while maintaining that

this fraudulently created document was a valid document in a judicial proceeding.

7. Impose enhanced penalties of **$10,000,000 per named Defendant** for fraud, retaliation, and failure to protect the Plaintiff.

8. Sanction Defendants' counsel for presenting fraudulent documentation and misleading this Court.

Respectfully submitted,

Andrew Joseph DiLeo

Plaintiff, Attorney pro se

144 Church Street

Manville, RI 02838

(401)477-2128

Andrew.j.dileo@gmail.com

November 24, 2024

CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2024, a true and correct copy of the foregoing Plaintiff's Motion to Vacate Judgement, For Rehearing, And to Impose Penalties and Enhanced Damages was served up all parties of record via the Court's CM/ECF system and at the following email addresses:

R. Victoria Fuller    fullerv@whiteandwilliams.com

Courtney Ann Longo    courtney.longo@lewisbrisbois.com

Elizabeth S. Dillon    elizabeth.dillon@simmons.edu

Lauren Farley    lauren.farley@lewisbrisbois.com

Victoria M. Ranieri     ranieriv@whiteandwilliams.com

Appendix A

Images used in the Fraudulent ARC Agreement



Screenshot taken on April 28, 2024 at 19:21 showing the release date of Aspose.words 22.9.0 as being September 8, 2022, a full year following the Plaintiff's dismissal from Defendant Fuller Hospital, and 11 months after dismissal from the Master of Social Work graduate program with Defendant Simmons.



Screenshot captured on April 20, 2024 at 09:45 showing Adobe Acrobat's indication of the date of creation (April 8, 2024 at 13:52:19) and the version of Aspose.Words for Java used as Version 22.9.0



Screenshot taken on April 29, 2024 at 09:48 showing the created text box as extracted from the fraudulent and fabricated document to approximate a "signature" of the Plaintiff.  This signature could not have been created by the Plaintiff, as the document was created on April 8, 2024, and does not contain any indication or certificate of authenticity, as noted by several Metadata



Analysis tools.

Screenshot taken on April 29, 2024 at 09:47, of the text boxes used to create the fabricated, fraudulent document.  Note the text box about the signature, the signature text box and the box containing the stock image of a check in a box.



Screen shot taken on April 29, 2024 at 09:47 (enlarged for clarity) of the "check box" used in the "signature" box.  It clearly demonstrates a sharp delineation of a "cut" mark in the upper right corner of the stock image.

Appendix A


Online report of ARC inconsistencies


Metadata2go.com

| | |
|---|---|
| **file_name** | |
| DiLeo - ARC Agreement - 4.14.2021 2.pdf | |
| **file_size** | |
| 91 kB | |
| **file_type** | |
| PDF | |
| **file_type_extension** | |
| pdf | |
| **mime_type** | |
| application/pdf | |
| **pdf_version** | |
| 1.7 | |
| **linearized** | |
| Yes | |
| **page_count** | |
| 5 | |
| **language** | |
| en-US | |
| **xmp_toolkit** | |
| PDFNet | |
| **format** | |
| application/pdf | |
| **producer** | |
| Aspose.Words for Java 22.9.0 | |
| **modify_date** | |
| 2024:04:08 13:52:19-04:00 | |
| **metadata_date** | |
| 2024:04:08 13:52:19-04:00 | |
| **category** | |
| application | |
| **producer** | |
| Aspose.Words for Java 22.9.0 | |
| **moddate** | |
| Mon Apr 8 19:52:19 2024 CEST | |
| **custom_metadata** | |
| no | |
| **metadata_stream** | |
| yes | |
| **tagged** | |
| no | |
| **userproperties** | |
| no | |
| **suspects** | |
| no | |

| form | |
|---|---|
| none | |
| **javascript** | |
| no | |
| **pages** | |
| 5 | |
| **encrypted** | |
| no | |
| **page_size** | |
| 612 x 792 pts (letter) | |
| **page_rot** | |
| 0 | |
| **file_size** | |
| 91392 bytes | |
| **optimized** | |
| yes | |
| **pdf_version** | |
| 1.7 | |

| pdf_fonts | |
|---|---|
| **name** | |
| FAAAAI+Arial-BoldMT | |
| **type** | |
| TrueType | |
| **encoding** | |
| WinAnsi | |
| **embedded** | |
| true | |
| **subset** | |
| true | |
| **unicode** | |
| false | |
| **object_id** | |
| 35 | |

**1**

| | |
|---|---|
| **name** | |
| FAAABB+ArialMT | |
| **type** | |
| TrueType | |
| **encoding** | |
| WinAnsi | |
| **embedded** | |
| true | |
| **subset** | |
| true | |

**unicode**

false

**object_id**

36

**2**

**name**

FAAABE+TimesNewRomanPSMT

**type**

TrueType

**encoding**

WinAnsi

**embedded**

true

**subset**

true

**unicode**

false

**object_id**

37

**pdf_images**

**page_number**

1

**image_number**

0

**type**

image

**width**

178

**height**

157

**color_space**

RGB

**color_components**

3

**bits_per_component**

8

**encoding**

image

**interpolation**

false

**object_id**

29

**x-ppi**

96

**y-ppi**
96

**size**
18.3K

**compression_ratio**
22%

**1**

**page_number**
5

**image_number**
1

**type**
image

**width**
20

**height**
20

**color_space**
Indexed_Color

**color_components**
1

**bits_per_component**
8

**encoding**
image

**interpolation**
false

**object_id**
11

**x-ppi**
96

**y-ppi**
96

**size**
89B

**compression_ratio**
22%

**raw_header**
25 50 44 46 2D 31 2E 37 0D 25 A6 E9 CF C4 0D 0A 32 34 20 30 20 6F 62 6A 0D 3C 3C 2F 4C 69 6E
65 61 72 69 7A 65 64 20 31 2F 4F 20 32 37 2F 48 20 5B 20 36 37 32 20 38 32 37 5D 2F 4C 20 39
31 33 39 32 2F 45 20 37 38 35 30 37 2F 4E 20 35 2F 54 20 39 31 31 37 34 3E 3E 0D 65 6E 64 6F 62
6A 0D 20 20 20 20 20 20 20 20 20 20 20 20 20 20 20 20 20 20 20 20 20 20 20 20 20 20 20 20 20
20 20 20

**mediabox**

| | |
|---|---|
| **0** | |
| 0 | |
| **1** | |
| 0 | |
| **2** | |
| 612 | |
| **3** | |
| 792 | |

**1**

| | |
|---|---|
| **0** | |
| 0 | |
| **1** | |
| 0 | |
| **2** | |
| 612 | |
| **3** | |
| 792 | |

**2**

| | |
|---|---|
| **0** | |
| 0 | |
| **1** | |
| 0 | |
| **2** | |
| 612 | |
| **3** | |
| 792 | |

**3**

| | |
|---|---|
| **0** | |
| 0 | |
| **1** | |
| 0 | |
| **2** | |
| 612 | |
| **3** | |
| 792 | |

**4**

| | |
|---|---|
| **0** | |
| 0 | |
| **1** | |
| 0 | |
| **2** | |
| 612 | |
| **3** | |
| 792 | |

Appendix B

Metadata Analysis of Inconsistencies

Exif.tools

DiLeo - ARC Agreement - 4.14.2021 2.pdf

# File Metadata

File Type: application/pdf
Error: 0
Upload Size: 91392

## exiftool:

| Name | Value |
| --- | --- |
| ExifTool Version Number | 12.25 |
| File Name | php9wbjc9 |
| Directory | /tmp |
| File Size | 89 KiB |
| File Modification Date/Time | 2024:12:03 20:46:25+00:00 |
| File Access Date/Time | 2024:12:03 20:46:25+00:00 |
| File Inode Change Date/Time | 2024:12:03 20:46:25+00:00 |
| File Permissions | -rw------- |
| File Type | PDF |

| File Type Extension | pdf |
|---|---|
| MIME Type | application/pdf |
| PDF Version | 1.7 |
| Linearized | Yes |
| Page Count | 5 |
| Language | en-US |
| XMP Toolkit | PDFNet |
| Format | application/pdf |
| Producer | Aspose.Words for Java 22.9.0 |
| Modify Date | 2024:04:08 13:52:19-04:00 |
| Metadata Date | 2024:04:08 13:52:19-04:00 |

Appendix C

Metadata Analysis of Inconsistencies

Exifinfo.org

